**UNITED STATES FIDELITY AND GUARANTY COMPANY, a corporation, and Country Cousins' Motors, Inc., Appellees,**

v.

**Aileen WALTERS, Administratrix of the estate of Ronald Walters, Deceased, and Mary Lou Walters, individually and as Administratrix of the estate of James C. Walters, Jr., Deceased, Appellants.**

No. 72–1160.

United States Court of Appeals,
Tenth Circuit.

Nov. 21, 1972.

Bruce Green, of Pearson, Caldwell & Green, Muskogee, Okl., for appellants.

A. Carl Robinson, Muskogee, Okl., arguing for appellees (A. Carl Robinson, Muskogee, Okl., on the brief for appellee, Country Cousins' Motors, Inc., and An-

drew Wilcoxen, Muskogee, Okl., on the brief for appellee, United States Fidelity and Guaranty Company).

Before JONES *, SETH and BARRETT, Circuit Judges.

SETH, Circuit Judge.

This action was commenced by United States Fidelity and Guaranty Company seeking a declaratory judgment that it was not bound to defend, or indemnify, the defendants, James Wilson and Country Cousins' Motors, Inc., under the terms of a policy of insurance it had issued to Country Cousins' Motors, Inc. Judgment in favor of United States Fidelity and Guaranty Company was entered. From that judgment, Aileen Walters, administratrix of the estate of Ronald Walters, and Mary Lou Walters, individually and as administratrix of the estate of James C. Walters, Jr., appeal.

Appellants, also defendants below, had commenced separate actions in the District Court of Muskogee County, Oklahoma, seeking damages for wrongful death and personal injuries from defendants Wilson and Country Cousins' Motors, Inc.

On Tuesday, March 31, 1970, defendant, James Wilson, went to work for defendant, Country Cousins' Motors, Inc., which operated two used car lots. It is undisputed that the possession of a 1960 Ford Falcon automobile was transferred to Wilson for his use on that day by his employer. On Friday, April 3, 1970, while driving the Falcon, Wilson was involved in an automobile accident resulting in fatalities and personal injuries, which is the subject of the pending state court action. Thereafter, this action was filed in the United States District Court.

The major issue at trial was whether or not possession of the automobile was given to Wilson "pursuant to a contract of sale." If so, then United States Fidelity and Guaranty Company would not be bound to defend or indemnify the defendants in the pending state court suit, since it would be relieved of this duty under an exclusory clause in the policy of insurance issued to Country Cousins' Motors, Inc. On the other hand, if the automobile was not transferred "pursuant to a contract of sale," then appellee is bound to defend and, if the decision is adverse, indemnify the defendants Wilson and Country Cousins' from any judgment rendered against them in the state court action.

During the trial appellants sought to have four witnesses testify to the fact that between the time Wilson was given the possession of the Falcon and the time he was involved in the automobile accident, Wilson had told them that he was "using" the car, or that Mr. Badley (manager and stockholder of Country Cousins') "loaned" him the car, or the car "belonged" to Country Cousins'.

Some excerpts from the record are relevant to a consideration of this point. During the testimony of Junior Graves, the owner of a garage to which the Falcon had been towed on an occasion before the accident, the following exchange took place:

"THE COURT: Now, let me make a statement addressed to the objection that has been raised by the Defendant Country Cousins to the question. I assume that the answer would be to the effect, if allowed to be given, would be to the effect, of course, that the car was owned by Country Cousins Motor Company. My present opinion is that that is strictly hearsay, a self-serving statement, and is not admissible. I think that in all probability that the testimony of the officer in that regard is also inadmissible in view of the statement that he made right at the end of his testimony. I allowed it because I was under the impression that it was a statement made to the officer in the course of an official investigation, and it developed later that it was a follow up much later that the officer could very well have taken on his own. Whether or

* Of the Fifth Circuit, sitting by designation.

not I will take into consideration the officer's testimony, I'll have to determine later. I have admitted it, but if I decide that I shouldn't consider it I won't. I'm going to hear this testimony in the form of an offer of proof, if you would like to make it. If I determine after thinking about it more than I have had time to in this five minutes, if I come to the conclusion that I should consider it in determining the issue of ownership, I will. If I decide that I should not, then, I'll exclude it from my consideration.

"You can make this in a form of an offer of proof.

"MR. CALDWELL: Your Honor, comes now the Defendant Walters—

"THE COURT: Well, I'll let you inquire and let him answer instead of —actually I would rather hear the offer in the form of questions and answers of the witness rather than a statement by counsel as to what his testimony would be.

"MR. PEARSON: All right, sir.

"Q (By Mr. Pearson) Now, Mr. Graves, before the recess—

"THE COURT: Let the record be clear that this is the offer of proof that we have been talking about.

"Q Before the recess, Mr. Graves, you were on the stand and I believe the question was asked you if you had an occasion to see Mr. James Wilson on the morning of April 3, 1970.

"A That's right.

"Q And did you see him that day?

"A Yes.

"Q And where did you see him?

"A At my place of business.

"Q And did you have a conversation with Mr. Wilson relative to the ownership of the 1960 Falcon automobile?

"A Well, I wasn't concerned about who owned it. The law had released it. They called me and told me no hold on the car. The boy said he didn't have the money to pay for it. I said the car will be here when you get the money. He said, 'Well, I work for a car dealer in Coweta and I can't pay for it until I get back to work.'

"Q Did he tell you, or did you all have a conversation relative to who owned that automobile?

"A He told me that he did not own the car.

"Q Did he tell you who did own it?

"A He said it belonged to a car dealer, that's all he told me."

Another example of this evidence is found during the examination of the witness, Milton Cade, a neighbor of the defendant Wilson:

"THE COURT: Well, I think I am going to proceed as I have before. I am going to sustain the objection and allow you to make an offer of proof within my hearing, and then I will determine later. You have presented a problem here that is just a little bit on the edge.

"MR. PEARSON: Yes, sir.

"THE COURT: I will do it this way, if there is any occasion to call on the attorneys for help in the matter I will let you know.

"Go ahead. I have sustained the objection. You may make your offer of proof.

MR. PEARSON: May I make an offer of proof, Your Honor?

"THE COURT: All right."

A similar discussion relative to the admissibility of testimony occurred during the examination of two other witnesses who offered to testify to the effect that Wilson had told them before the accident that he did not own the car.

First, we note that appellants never requested a clarification of these rulings from the trial court. We have no way of knowing whether this evidence was considered by the trial court in reaching his conclusions. We do, however, have the original ruling in the record. Normally, we would not consider this contention, and make exception here because the evidence on both sides was very evenly balanced. If this evidence was

actually excluded from consideration, it was clearly prejudicial to appellants' case.

■■ From the foregoing, it is apparent that we are of the view that the testimony sought to be introduced regarding Wilson's statements as to the ownership of the automobile was admissible as an exception to the hearsay rule. These statements are properly characterized as admissions of a party. They were statements against the proprietary interest of the defendant Wilson *at the time they were made*. They appeared to be self-serving only in the light of the automobile accident which occurred later. We would agree with the trial court that these statements were not admissible if made *after* the automobile accident. This, however, is not the case, and the statements were admissible. Under the circumstances here present, it was reversible error to exclude the statements. The statements excluded were as to "ownership" of the car. This may not be the same matter as "possession transferred pursuant to an agreement of sale." However, they bear in a significant way on the single, narrow, fundamental issue.

Reversed.